UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GLENNIS HOBBS,

    Plaintiff,

v.                                          Case No. 3:23cv1510-MCR-HTC

MARTIN O'MALLEY,[1]
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff Glennis Hobbs seeks judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383.[2] Doc. 1. After review of the administrative record, Doc. 6, and the memoranda of the

---

[1] Martin O'Malley replaced Kilolo Kijakazi as the Commissioner of Social Security and is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability insurance benefits are identical to those governing a claim for supplemental security income. *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Thus, regardless of a whether a referenced statute herein addresses DIB or SSI, only, the legal principle at issue applies equally to both claims.

parties, Docs. 14 & 15, the undersigned recommends the decision of the Commissioner be affirmed. The undersigned finds substantial evidence exists in the record to support the Commissioner's decision.

## I.   ISSUES ON REVIEW

Hobbs raises one issue on appeal. He argues that his activities of daily living ("ADLs") relied upon by the Administrative Law Judge ("ALJ") do not constitute the substantial evidence required to discredit his testimony and the opinion of his treating physician, Dr. Thomas Schneider. Doc. 14 at 3.

## II.   BACKGROUND

### A.   Procedural History

On August 25, 2015,[3] Hobbs, a former industrial cleaner, protectively filed applications for DIB and SSI when he was 38 years old, alleging he became disabled on March 22, 2014, due to academic barriers, history of back injury, pinched nerves/lumbar spine, left hip problems, diabetes, blurred vision, high blood pressure, and bilateral occasional hand numbness.[4] T. 17, 131-32, 144-45, 294.[5] The

---

[3] The Commissioner's memorandum identifies the application date as August 20; Hobbs' brief identifies it as August 25. Based on the record, the correct date appears to be August 25, 2015. T. 294. This dispute is not material.

[4] Hobbs also filed for DIB and SSI benefits on June 18, 2012, based on an onset date of June 2, 2011. T. 114. The ALJ determined Hobbs was not disabled, and the Appeals Council denied review. T. 114, 127. The March 22, 2014 onset date is the day after the ALJ issued her decision in the first application.

[5] The administrative record filed by the Commissioner consists of 8 volumes (Docs. 6-1 through 6-8) and has 2,190 consecutively-numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

Commissioner denied the applications initially and on reconsideration. T. 189-96, 201-212. After conducting two hearings (one on June 7, 2017, and one on January 12, 2018), ALJ James F. Barter issued a decision on July 5, 2018, finding Hobbs was not disabled under the Act (the "ALJ's 2018 Decision"). T. 17-27. On February 19, 2019, the Appeals Council denied Hobbs's request for further review. As a result, the ALJ's decision became the final decision of the Commissioner. T. 1-3.

Hobbs appealed the decision to the District Court. *See Hobbs v. Saul*, 3:19cv777-LC/CAS, Doc. 1 (Apr. 18, 2019) ("*Hobbs I*"). On December 2, 2019, Magistrate Judge Stampelos issued a Report and Recommendation to set aside the Commissioner's decision and remand the matter for further proceedings, which was adopted by the Court on March 4, 2020. *See* T. 1706-58; *Hobbs I*, 3:19cv777-LC/CAS, Docs. 17 & 18. Specifically, Judge Stampelos concluded there was a lack of substantial evidence supporting the ALJ's determination that Hobbs was not disabled from January 2016 to the date of the ALJ's 2018 Decision. T. 1746. Judge Stampelos stated that this conclusion was based on the lack of a consultative examination because the last physical examination occurred in 2015, thus creating a "gap in the record." T. 1746, 1756. Judge Stampelos did not take issue with the ALJ's determination that Hobbs was not disabled as of the onset date through January 1, 2016. T. 1746.

On January 15, 2021, the Appeals Council vacated the ALJ's July 5, 2018

Decision and remanded the case to the ALJ for further proceedings.  T. 1763.  On remand, after holding a telephonic hearing, T. 1614, the ALJ again found Hobbs was not disabled under the Act (the "August 20, 2021 Decision).  T. 1614-28.  After considering additional evidence submitted by Hobbs, the Appeals Council denied Hobbs's request for further review.  As a result, the ALJ's decision became the final decision of the Commissioner.  T. 612-17.  On January 24, 2023, Hobbs filed a complaint with this Court seeking review of the Commissioner's decision.  Doc. 1.

### B.   The ALJ's Findings

The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To be considered disabled, an individual's impairments must be so severe he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Id.* § 423(d)(2)(A).

"The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment

meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted).

Here, the ALJ determined at step one that Hobbs had not engaged in substantial gainful activity since March 22, 2014. T. 1616. At step two, he found Hobbs had the following severe impairments from the alleged onset date through December 31, 2015: degenerative disc disease of the lumbar spine; diabetes mellitus; obesity; and adjustment disorder with anxiety and depressed mood, and that from January 1, 2016 until the date of his decision, Hobbs had as an additional severe impairment: diabetic peripheral neuropathy. T. 1617. He determined at step three that Hobbs did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T.1617.

At step four, the ALJ concluded for the period from the alleged onset date through December 31, 2015, Hobbs was unable to perform any past relevant work but had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could not climb ladders, ropes or scaffolding. The claimant could occasionally climb ramps and stairs and occasionally stoop, kneel, crouch, or crawl. The claimant could not work around unprotected heights, dangerous machinery or operate automotive equipment. The claimant could frequently handle and finger. The claimant was limited to unskilled work that involved simple work decisions that ordinarily had few changes.[6]

T. 1619. For the period from January 1, 2016, through the August 20, 2021, date of his decision, the ALJ found Hobbs had the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he cannot climb ladders, ropes or scaffolding. The claimant can occasionally climb ramps and stairs and occasionally stoop, kneel, crouch, or crawl. The claimant cannot work around unprotected heights, dangerous machinery or operate automotive equipment. The claimant can frequently handle and finger. He may need to use a cane when walking but not standing. The claimant is limited to unskilled work that involves simple work decisions that ordinarily have few changes.

T. 1623.

Based on these RFCs, and relying on the testimony of a vocational expert, the ALJ found at step five that for the period from the alleged onset date through December 31, 2015, Hobbs could perform work as a bench assembler, small products; final inspector; and cleaner/housekeeper. T. 1627. For the period from January 1, 2016, through August 20, 2021, Hobbs could perform work as an end band cutter; nut sorter; and ticket checker. T. 1627. Thus, the ALJ concluded Hobbs was not disabled from March 22, 2014, through August 20, 2021, the date of his

---

[6] This RFC determination is the same as that contained in the ALJ's 2018 Decision.

Case No. 3:23cv1510-MCR-HTC

decision.  T. 1628.

## III.   STANDARD OF REVIEW

"[R]eview of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824 (11th Cir. 2010) (citation omitted).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).  Under this limited standard of review, the Court may not make fact-findings, re-weigh the evidence, or substitute its judgment for that of the ALJ.  *Heatly*, 382 F. App'x at 824 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

## IV.   DISCUSSION

As stated above, when the Court remanded this matter to the Commissioner in *Hobbs I*, it did so because there was not substantial evidence to support a determination that Hobbs was not disabled after January 1, 2016.  Thus, as an initial matter, although the ALJ's August 20, 2021 Decision includes two RFC determinations, this appeal deals with only the post-January 1, 2016, sedentary work determination.  Doc. 14 at 34 ("The ALJ rejected [Hobbs'] testimony and discredited Dr. Schneider's opinion when concluding that Mr. Hobbs could perform sedentary jobs.").  The discussion below, therefore, will be focused solely on the portion of the

ALJ's decision which supports his RFC determination for the period from January 1, 2016, to the date of the decision.

As an initial matter, Hobbs argues the ALJ erred in discrediting his testimony and the opinion of one of his treating physicians, Dr. Schneider. Hobbs bases this argument on his belief that the ALJ did so because of Hobbs' ADLs. In other words, Hobbs focuses on the ALJ's references in the medical records to Hobbs walking for exercise, being active, and helping his father in the yard, as being the ALJ's sole or primary basis for discrediting Hobbs' and Dr. Schneider's testimonies. As will be discussed in detail below, a fair reading of the ALJ's decision does not bear this out.

Instead, the ALJ's RFC sedentary work determination, and his treatment of Hobbs' subjective complaints as well as Dr. Schneider's opinions, was based on numerous factors, including the objective medical data. While the ALJ also considered the ADLs, it was not error for him to do so. A claimant's ADLs are *a* factor the ALJ should consider when making a disability determination and certainly one to consider when assessing a claimant's complaints. *See e.g., May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 959 (11th Cir. 2007) ("the ALJ properly considered May's self-reported limited daily life activities, along with all the other evidence in the record, in concluding that her testimony regarding her subjective symptoms could not be fully credited"). Hobbs' reliance on *Lewis v. Callahan* as precluding an ALJ from considering ADLs at all is simply wrong. *See e.g., Robinson*

*v. Astrue,* 365 F. App'x 993, 998 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability benefits, *Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir.1997), that does not mean it is improper for the ALJ to consider a claimant's daily activities at all.") (citing 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms)). As discussed below, the ALJ's sedentary RFC determination as well as his treatment of Hobbs' subjective statements of pain and limitations and Dr. Schneider's opinions were supported by substantial evidence.

During the 2021 telephonic hearing held before the ALJ on remand, Hobbs told the ALJ he could drive locally and do laundry with the help of his father and brother. T. 1647, 1649-50. He stated he frequently sits in his recliner with his feet raised because after approximately ten minutes his feet start hurting if he sits with his feet on the floor. T. 1653-54. Hobbs testified he could stand for ten to fifteen minutes before he would need to sit down. T. 1653. He believed he could lift ten to fifteen pounds using both hands but described having intermittent trouble holding things in his hands, like a cup of water or cold drink from a fast-food restaurant. T. 151-52. He also testified he has difficulty walking a long distance due to neuropathy pain in his feet and legs. T. 1647-49. He estimated four days out of the

week his symptoms limited his ability to walk the two hundred and fifty feet to his mailbox. T. 1658.

A claimant who attempts to prove disability based on subjective complaints must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of his alleged symptoms or evidence establishing his medical condition could reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 96-7p; *Wilson v Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes he has an impairment that could reasonably be expected to produce the symptoms alleged, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 96-7p; *Qualls v. Astrue*, 428 F. App'x 841, 845 (11th Cir. 2011).

To do this, the ALJ must make a finding about the credibility of Hobbs' statements about his symptoms and their functional effects. *Id.* "In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers the entire record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his] doctors." *Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019).

The ALJ must clearly articulate adequate reasons for discrediting the claimant's allegations of disabling symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). The reasons articulated for disregarding the plaintiff's subjective testimony must be based on substantial evidence. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not … whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ determined Hobbs suffered from medically determinable impairments which could reasonably be expected to cause some of Hobbs' alleged symptoms. However, the ALJ found that Hobbs' statements regarding his limitations were not consistent with the medical evidence or other evidence in the record. In his decision, the ALJ explained his reasoning.

For example, one of the medical records Hobbs relies upon heavily is a January 2016 Medical Source Statement ("January 2016 MSS") completed by Dr. Schneider.[7] Hobbs contends the January 2016 MSS is consistent with his subjective

---

[7] In 2016, Dr. Schneider diagnosed Hobbs with diabetic neuropathy and in 2017, diagnosed him with peripheral neuropathy.

complaints.  The ALJ, however, considered the January 2016 MSS and (like the *Hobbs I* Court),[8] found Dr. Schneider's conclusions to be unsupported.

The January 2016 MSS is a "check the box" form Dr. Schneider completed, in which he, opined, *inter alia*, that Hobbs could occasionally lift/carry up to 5 pounds and sit for one hour in an 8-hour workday but that he cannot stand or walk at all.  T. 473.  Dr. Schneider also opined Hobbs would be absent from work 5 or more times per month, would require 5 or more breaks a day, and would need to alternate between sitting and standing, as needed.  T. 473-74.  While sitting, Hobbs must elevate his legs above his waist, would need to use a cane for his neuropathy, and while he could do simple grasping, he would be unable to use his feet for pushing or pulling leg controls.  T. 473.  Dr. Schneider further opined that Hobbs could never be exposed to extreme cold or heat, wetness or humidity, vibrations, or hazards.  T. 474.  He opined that Hobbs could focus consecutively for only 10 to 20 minutes, and that he was permanently disabled.  T. 474.  Hobbs argues the ALJ erred in giving the opinions "little weight."  The undersigned disagrees.

For disability claims filed on or before March 27, 2017, such as Hobbs' claim, an ALJ is required to assign greater weight to the opinions of treating physicians. This rule, referred to as the "treating physician rule," requires the ALJ to assign

---

[8] *See* T. 1732 ("As of the date of Dr. Schneider's MSS, substantial evidence supports the ALJ's determination that the medical records do not support Dr. Schneider's conclusions rendered at this time.").

controlling weight to the opinion of a treating physician if the opinion is well supported and not inconsistent with other evidence in the record. *See* 20 C.F.R. § 416.927(c)(2). If an ALJ assigned less than controlling weight to a treating physician, the ALJ had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when "(1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) … [the opinion] was conclusory or inconsistent with the doctor's own medical records." *Woodley v. Comm'r of Soc. Sec. Admin.*, 6:18-cv-01778-JHE, 2020 WL 1433153, at *4 (N.D. Ala. Mar. 24, 2020) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). The Court finds no error in the ALJ's treatment of the January 2016 MSS.

First, the ALJ articulated good cause for not giving Dr. Schneider's opinions controlling weight, as he explained the opinions were not supported by Schneider's own treatment records or the record as a whole. For example, a treatment record from the same date as the MSS described Hobbs as "stable." T. 517, 1621. The ALJ noted that other treatment records from 2015 and 2016 indicated Hobbs walked for exercise, thereby refuting Schneider's opinion Hobbs could not walk at all. T. 515, 1621. The ALJ explained that Dr. Schneider failed to provide a reasonable explanation for his opinion or refer to any objective medical evidence to support his

opinion. T. 473-74, 1621. The ALJ also gave little weight to Dr. Schneider's opinion set forth on a February 2016 application for a disabled parking permit that stated Hobbs's ability to walk was severely limited and he required an assistive device to walk as conclusory and unsupported by objective medical evidence. T. 575-75, 1621.

Second, a review of the record shows that substantial evidence supports the ALJ's assignment of weight. Medical records from 2015, identify Hobbs as being "stable," T. 431, his objective examinations "normal," T. 432, his muscle strength was 5/5 in all 4 extremities, T. 459, that he can ambulate without a cane, *albeit*, slowly, *id.*, and his range of motion of the cervical spine, lumbar spine, elbow, wrist, hand, hip, knee, ankle, and feet were all within normal ranges, T. 461-63. A September 2015 general clinical evaluation with mental status, conducted by Dr. Hirschorn, noted that Hobbs drove to the visit, did not appear to be in physical distress, and despite walking with a cane and rating his chronic back and leg pain at an "8 or 9 daily," "did not appear to be physically uncomfortable." T. 466. Dr. Hirschorn also noted that Hobbs "seems rather passive in his approach to resolving his difficulties." T. 467. Also, in May 2016, Hobbs visited Sacred Heart Hospital complaining of a cough. T. 483. A physical examination of his back and lower extremities was normal, with normal range of motion. T. 484-85.

Finally, the ALJ also did not err in disregarding Dr. Schneider's opinion that

Hobbs is permanently disabled. Whether a claimant is disabled is a legal conclusion reserved for the ALJ, and the doctor's opinion on that legal issue is not entitled to any deference. *See Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 742, n.5 (11th Cir. 2011) (doctor's letters, stating in conclusory fashion that plaintiff was totally disabled and unable to work, "were not medical opinions entitled to any special significance") (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)); *Kramerman v. Colvin,* 2015 WL 965763, at *8 (S.D. Fla. Mar. 4, 2015); *Williams v. Comm'r of Soc. Sec. Admin.*, 2015 WL 5708772, at *3 (N.D. Ala. Sept. 18, 2015) ("As the ALJ properly noted, Dr. Hudgins' opinion that Williams is permanently disabled is an opinion on an issue reserved to the Commissioner, and therefore not entitled to any special significance[.]").

Thus, the ALJ had good cause for assigning less than controlling weight to Dr. Schneider's January 2016 opinions. *See Woodley v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1433153, at *4 (N.D. Ala. Mar. 24, 2020) (good cause exists to reject opinions not bolstered by the evidence; contrary evidence exists; or are conclusory or inconsistent with the doctor's own medical records) (citing *Phillips v. Barnhart,* 357 F.3d 1232, 1241 (11th Cir. 2004)). And Hobbs' reliance on the January 2016 MSS to support his subjective complaints is misplaced.

The ALJ also discussed statements Dr. Schneider gave to Hobbs' counsel

during an interview on June 19, 2017,[9] and determined it supported a sedentary RFC determination. During that interview, Dr. Schneider stated that Hobbs suffered from diabetic neuropathy and described the effects of the cumulative disease process, including inflammation in the feet, legs, and elsewhere which resulted in secondary loss of hair, as observed on Hobbs' hands. T. 538-41. Dr. Schneider also noted, however, that Hobbs's diabetes was doing well, and that he was within acceptable results based on his medication regimen. T. 538.

While Hobbs is correct that the ALJ gave partial weight to Dr. Schneider's testimony, he is incorrect that the "ALJ rejected this testimony" or discredited it when concluding Hobbs could perform sedentary jobs. Doc. 14 at 34. To the contrary, the ALJ specifically stated that he had accounted for Dr. Schneider's testimony "with the limitation to sedentary work, which involves limited standing and walking, and the use of a cane." T. 1624.

The ALJ also pointed to other places in the medical records which were contrary to both Dr. Schneider's opinions and Hobbs' subjective statements. For example, in October 2017 Hobbs underwent a diabetic foot evaluation. T. 599. Although Dr. Hodges recommended that Hobbs limit his ambulation and walking because of the loss of nerve sensation and instability, other treatment notes from the

---

[9] In *Hobbs I,* the Court specifically noted that the ALJ should have considered Dr. Schneider's updated assessments, including this interview. T. 1751, n.28.

same date suggested Hobbs should start walking a mile, T. 594.  Thus, even with Dr. Hodges' recommended limitation, Hobbs could walk more than what he testified to, which was no more than to his mailbox, and more than what Dr. Schneider suggested, which was not at all in an 8-hour day.  Regardless, Dr. Hodges did not limit Hobbs to sitting only, and thus, Hobbs would not be precluded from performing a sedentary job, which includes mostly sitting, with occasional standing and walking.  *See* 20 CFR § 404.1567 (defining sedentary work).

Also, in July 2020, Hobbs was admitted to the hospital for acute cholecystitis.  T. 1624-25, 2077-2162.  Those records show an examination of Hobbs' lower extremities which had no edema, palpable pulses, and intact protective sensation at the bilateral plantar surface.  T. 2087.

The ALJ also noted a lack of any objective evidence in the record post-January 2016 showing Hobbs was limited by any back pain.  T. 1625.

In 2021, Hobbs underwent a consultative examination performed by Dr. Sholty, which the ALJ considered at length.  Hobbs drove himself to the appointment. T. 1625, 2057.  Hobbs reported taking no medication. T. 1625, 2057.  On exam, Hobbs had reduced range of motion in his lumbar spine and no spasm of the paraspinous muscles.  T. 1625, 2062. Straight leg raise was positive, and he had normal grip strength in both hands (5/5) and normal fine and gross manipulative skills (10/10) with no evidence of muscular atrophy.  T. 1625, 2060.  Hobbs had

normal strength in his upper extremities and near normal strength in his lower extremities (4+/5) and no muscular atrophy. T. 1625, 2060. Sensation was intact to pinprick and touch over the upper and lower extremities and reflexes were normal. T. 1625, 2060. He had reduced range of motion in his hips, and normal range of motion in his shoulders, elbows, wrists, hands, knees, and ankles. T. 1625, 2061. In Dr. Sholty's narrative report, he opined Hobbs can stand and walk frequently, frequently lift and carry 20 pounds and that his ability to bend and stoop is limited. T. 1625, 2062. He also opined that Hobbs ambulated with difficulty and used an assistive device which appeared to be helpful but was not required. T. 1625, 2062. Dr. Sholty's objective examination[10] is not consistent with Hobbs' subjective statements or Dr. Schneider's opinions.

As Hobbs points out, the ALJ also considered references in the medical records to Hobbs' ADLs, including a 2017 record which identified Hobbs as being "moderately active," including walking "30 mins. x 4." T. 600, and a 2019 record, identifying Hobbs as "active," engaging in brisk activity "30m x 7," T. 2075; *see also,* T. 2071.[11] Hospital records from 2020 show Hobbs reported he was active at

---

[10] Dr. Sholty also completed an MSS, which the ALJ afforded little weight, finding it inconsistent with the objective examination. Hobbs does not contest the ALJ's treatment of that MSS and therefore has waived that argument. *See, e.g.*, *Robinson v. Astrue*, 235 F. App'x 725 (11th Cir. 2007) (holding claimant waived argument that ALJ failed to fully develop record when that argument was not raised in the district court).

[11] Dr. Schneider's progress notes from August 5, 2017, also indicate Hobbs exercises by walking. T. 536.

Case No. 3:23cv1510-MCR-HTC

home, frequently working outside with his father performing moderate activity and able to walk several blocks without difficulty.  T. 2086.  These reports of Hobbs' ADLs are certainly inconsistent with Hobbs' subjective complaints and Dr. Schneider's opinions, and as stated above, were matters the ALJ properly considered.[12]  *See e.g., Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not … prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process.").

## V.   CONCLUSION

A review of the ALJ's decision shows he applied the correct legal standards and considered all the relevant evidence, including the treatment from Hobbs' physicians, other medical records, the hearing testimony, and the opinions from both the treating and nonexamining sources.  From this evidence, he concluded Hobbs could perform sedentary work with additional limitations.  For the reasons set forth above, the undersigned finds the ALJ's disability determination is supported by substantial evidence and finds no error in either the ALJ's treatment of Hobbs'

---

[12] Hobbs claims being described as "active" is consistent with Dr. Schneider's opinions and his own testimony.  That, however, is not true.  "Active" is the highest level of physical activity listed on the form used by the medical clinic and is defined as "10 minute *brisk aerobic activity* (walking, biking, swimming) – *15 or more 10 minute sessions* in the last week."  T. 2071, 2075 (emphasis added).  Moreover, regardless of the definition, Hobbs reported to medical staff that he walked 30 minutes several times week – a report inconsistent with his testimony and Dr. Schneider's opinions in the January 2016 MSS.

Case No. 3:23cv1510-MCR-HTC

testimony or Dr. Schneider's opinions, and, thus, the denial of DIB and SSI is affirmed.

Accordingly, it is respectfully RECOMMENDED that:

1. The Commissioner's decision denying DIB and SSI benefits be AFFIRMED.

2, The clerk be directed to enter judgment in favor of the Commissioner and close the file.

At Pensacola, Florida, this 8th day of January, 2024.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.